## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MELVIN CROSBY-BEY,              :
    Also Known As ANTHONY CROSBY-BEY,:    Civil Action No. 08-311 (HHK)
       Petitioner            :
                         :
v.                         :
                         :
EDWARD F. REILLY, Jr., et al.,     :
       Respondents        :

## UNITED STATES PAROLE COMMISSION'S OPPOSITION TO PETITIONER'S PETITION FOR A WRIT OF HABEAS CORPUS

The United States Parole Commission ('the Commission"), by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully files its opposition to the petitioner's pro se petition for a writ of habeas corpus. In support of his petition, the petitioner claims that the Commission's utilization of the Commission's re-parole guidelines, following the revocation of his parole, violated the Ex Post Facto clause of the Constitution. Because the Commission's use of its re-parole guidelines did not violate the Ex Post Facto clause of the Constitution, the petitioner's petition should be summarily denied.

### BRIEF PROCEDURAL HISTORY

The petitioner, Melvin Crosby-Bey, also known as Anthony Crosby, was sentenced on October 6, 1976 in Superior Court of the District of Columbia Case No. 8724-76 to an aggregate maximum term of 45 years' incarceration for committing second degree burglary while armed, two counts of assault with a dangerous weapon, and carrying a pistol without a license. See Exhibit 1 (Judgment and Commitment Order). The petitioner was paroled by D.C. Board of Parole ("the Board") on January 9, 1990. See Exhibit 8B at p. 1 (D.C. Local Revocation

Prehearing Assessment). The Board revoked the petitioner's parole on December 23, 1993 for failure to report to his supervision officer and use of drugs. Id. The Board did not grant the petitioner re-parole until November 20, 1997. Id. at p. 2. The United States Parole Commission revoked the petitioner's parole on December 6, 2000 for failure to report to his supervision officer and use of drugs. Id. at p. 2.[1] The Commission granted the petitioner re-parole on January 3, 2001 and the petitioner was to remain under supervision until May 18, 2021. See Exhibit 2 (Certificate of Parole).

On July 25, 2003, the petitioner's supervision officer requested that the Commission issue a parole violator warrant for the petitioner for violating the conditions of his parole by failing to comply with drug aftercare conditions, using a controlled substance, and failing to report for supervision. See Exhibit 3 (Report of Alleged Violation(s)). The petitioner's supervision officer renewed his request for a parole violator warrant on September 12, 2003 with additional information on several of the alleged parole violations. See Exhibit 4 (Addendum). The Commission issued a parole violator warrant on October 21, 2003, charging the petitioner with repeatedly using cocaine, refusing to participate in a drug aftercare program, and failing to report to his supervision officer as directed and noted that the petitioner's whereabouts were unknown. See Exhibit 5 (Warrant Application) and Exhibit 6 (Warrant).

The petitioner was arrested on the parole violator warrant more than four years later, on November 16, 2007. See Exhibit 7 (Warrant Execution). The petitioner was given a probable

---

[1]On August 5, 2000, the Commission assumed the responsibility of making parole revocation decisions for all D.C. Code felony offenders pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law No. 105-33, §11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code § 24-131 (formerly § 24-1231).

cause hearing on November 23, 2007 by a Commission's hearing examiner and the hearing

examiner found probable cause for the alleged violations. See Exhibit 8A (D.C. Probable Cause

Hearing Digest). After a pre-hearing assessment of the case, a local parole revocation hearing

was held on March 12, 2008, at which the petitioner was represented by counsel. See Exhibit 8 B

and Exhibit 9 (Hearing Summary). On March 27, 2008, the Commission revoked the petitioner's

parole, denied him credit for time spent on parole, and established a re-parole date of November

15, 2008, after the service of 12 months. See Exhibit 10 (Notice of Action).[2]

The notice of action advised the petitioner that he had 30 days from the date of the

decision to appeal to the Commission. See 28 C.F.R. §2.105(g). The petitioner has not yet

appealed the Commission's decision.

## ARGUMENT

There is no merit to the petitioner's claim that the U.S. Parole Commission's use of its

rules and regulations to establish the petitioner's re-parole date, instead of utilizing the D.C.

Board of Parole's re-parole rules and regulations, violates the Ex Post Facto clause of the

Constitution.[3]

---

[2]The re-parole decision was made in accordance with the Commission's guidelines at 28 C.F.R. §2.81; the petitioner's guideline range was 8-12 months to be served before re-parole.

[3]The Court has subject-matter and personal jurisdiction because the petitioner was confined at the District of Columbia Correctional Treatment Facility at the time he filed his petition. However, the only proper respondent is Warden John Caulfield of the Correctional Treatment Facility. See 28 U.S.C. § 2243; Blair-Bey v. Quick, 151 F.3d 1036, 1039 (D.C. Cir. 1998) ("When a prisoner seeks to challenge parole-related decisions, the warden of the prison and not the U.S. Parole Commission is the prisoner's 'custodian.'"); Guerra v. Meese, 786 F.2d 414, 416 (D.C. Cir. 1986) (holding that "for purposes of challenging a Parole Commission action on the sentence a prisoner is currently serving in a federal penal facility, the warden of that facility is the prisoner's custodian within the meaning of 28 U.S.C. §§ 2241-2243") (citations omitted); Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004) ("longstanding practice confirms that in

I.     **Statutes, Rules, and Regulations Relevant to Petitioner's Claim**

When the petitioner committed his crimes in 1975, the D.C. Board of Parole was guided

by the following statutes in determining when a parole violator should be re-paroled:

> If the order of parole shall be revoked, the prisoner, unless subsequently reparoled, shall serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him after his return to custody. D.C. Code § 24-406(a)

> Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe. D.C. Code § 24-404(a)

These two statutes remain in effect today.  As a result of the transfer of correctional and parole

functions required by the 1997 National Capital Revitalization and Self-Government

Improvement Act, the U.S. Parole Commission succeeded the former D.C. Board of Parole in

making re-parole decisions for revoked offenders like petitioner. D.C. Code § 24-131(a)(1).  The

Commission was still required to exercise its releasing authority "pursuant to the parole laws and

regulations of the District of Columbia." D.C. Code § 24-131(c).  However, the Commission also

has the "exclusive authority to amend or supplement any regulation interpreting or implementing

the parole laws of the District of Columbia."  D.C. Code § 24-131(a).

The former D.C. Board of Parole's regulations included the following rules that governed

the timing of rehearings for parole violators and outlined the factors considered in making parole

---

habeas challenges to present physical confinement – 'core challenges' – the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official") (citations omitted). Accordingly, the Court should strike Edward F. Reilly, Jr. and the U.S. Parole Commission and leave Warden Caulfield as the appropriate respondent.

(and presumably re-parole) decisions:

> Rehearings will be afforded parole and mandatory release violators whose status was revoked by Board action.  Such rehearings for a violator who has less than five years remaining to be served will ordinarily be held six months from the last Board action, while in the case of one having more than five years remaining to be served the rehearing will ordinarily be held one year from the last action taken by the Board.

> In all cases of rehearings, the Board reserves to itself the right to establish a rehearing date at any time it feels such would be proper, regardless of the length of sentence involved or the time remaining to be served. 9 D.C.R.R. § 103, attached as Exhibit 11.

<u>FACTORS CONSIDERED</u>

Among others, the Board takes into account some of the following factors in making its determination as to parole:

(a) The offense, noting the nature of the violation, mitigating or aggravating circumstances and the activities and adjustment of the offender following arrest if on bond or in the community under any pre-sentence type arrangement.

(b) Prior history of criminality noting the nature and pattern of any prior offenses as they may relate to the current circumstances.

(c) Personal and social history of the offender, including such factors as his family situation, educational development, socialization, marital history, employment history, use of leisure time and prior military experience, if any.

(d) Physical and emotional health and/or problems which may have played a role in the individual's socialization process, and efforts made to overcome any such problems.

(e) Institutional experience, including information as to the offender's overall general adjustment, his ability to handle interpersonal relationships, his behavior responses, his planning for himself, setting meaningful goals in areas of academic schooling, vocational education or training, involvements in self-improvement activity and therapy and his utilization of available resources to overcome recognized problems.  Achievements in accomplishing goals and efforts put forth in any involvements in established programs to overcome problems are carefully evaluated.

(f) Community resources available to assist the offender with regard to his needs and problems, which will supplement treatment and training programs begun in the institution, and be available to assist the offender to further serve in his efforts to reintegrate himself back into the community and within his family unit as a productive useful individual. 9 D.C.R.R. §105.1, attached as Exhibit 11.

When the Commission took over the function of parole release decision-making from the

Board in 1998, the Commission made use of its authority to "amend and supplement" D.C. parole regulations.  The Commission promulgated parole guidelines for determining the release of D.C. offenders who had yet to be granted parole, and those offenders who had been granted parole but had their parole revoked for violating their conditions of parole.  For the former group, the Commission developed guidelines based on the "grid score" guidelines used by the  Board, with some modifications.  These guidelines are described at 28 C.F.R. § 2.80 and focus on the risk of future criminal behavior posed by the possible parole of the prisoner, including the risk of future violence, and also consider the post-commitment conduct and program performance of the prisoner.[4]  For the latter group of revoked parole violators, the Commission promulgated regulations that distinguished between two sub-groups.  Those parole violators serving a new, parole-eligible, D.C. Code sentence would be considered for re-parole using the § 2.80 guidelines.[5]  For the other parole violators, such as the petitioner, the Commission uses the guidelines at 28 C.F.R. § 2.21 and § 2.20. See 28 C.F.R. § 2.81.[6]  Under § 2.21 and § 2.20, the

---

[4]In most cases, like the Board, the Commission accepted that the prisoner's service of the minimum term of imprisonment imposed by the sentencing judge satisfied the need for just punishment and to hold the offender accountable for his crime.

[5]In promulgating the § 2.80 guidelines, the Commission has "built-in" the factor of program performance. In the initial version of  § 2.80, the Commission authorized the subtraction of 1 point for ordinary program achievement and 2 points for superior program achievement from the point score otherwise determined for the prisoner.  A lower point score improved the prisoner's chances for parole under these guidelines.  Under the revised (and present) version of the §2.80 guidelines, if the Commission finds that a prisoner has demonstrated superior program achievement, he receives a reduction of one-third the number of months for the period he demonstrated such achievement, with the reduction made from the minimum and maximum limits of the guideline range determined for the prisoner.

[6]28 C.F.R. § 2.81 states in part:
(a) If a prisoner is not serving a new, parolable D.C. Code sentence, the Commission's decision to grant or deny reparole on the parole violator term shall be made by reference to the reparole

Commission determines an offense severity rating for the violation behavior and a parole prognosis using the salient factor score, an actuarial device that assists in determining the likelihood of future parole violation by the offender.[7]  Decisions outside the guidelines are permitted by the Commission's rules, regardless of which set of guidelines is used in determining whether the violator should be re-paroled.  See 28 C.F.R. § 2.80(n) and § 2.20(c). Coupled with the case evaluation under the § 2.20 guidelines, the Commission, in most cases, sets a presumptive parole release date for the prisoner in order to give the prisoner some certainty as to when he will be released from confinement.[8]

Institutional conduct and performance in prison programs are relevant factors for the Commission's consideration, even with the use of guidelines that focus on offense severity and parole risk.  The guideline ranges set forth at § 2.20 are established on the assumption that the prisoner has shown good conduct and program performance while incarcerated on his current

---

guidelines at § 2.21. . . .
(b) If the prisoner is eligible for parole on a new D.C. Code felony sentence that has been aggregated with the prisoner's parole violation term, the Commission shall make a decision to grant or deny parole on the basis of the aggregate sentence, and in accordance with the guidelines at § 2.80.

[7]There are eight categories of offense severity ratings, ranging from Category One (the least severe) to Category Eight (the most severe).  There are four categories of parole prognosis based on the salient factor score,ranging from "very good" to "poor."  The severity rating categories are arrayed on a vertical axis and the parole prognosis categories are arrayed on a horizontal axis, and at the intersection of each category of offense severity and parole prognosis is a range of months to be served before release, e.g., 8-12 months for a prisoner with an offense severity rating of Category One and a parole prognosis of fair (salient factor score of 5 to 4).

[8]If such a date cannot be set within 15 years of the hearing, the Commission sets the prisoner off for a 15-year reconsideration hearing.  Regardless, a prisoner denied a prompt parole receives an interim hearing every 24 months to review his prison record, his program performance, and other new information arising in his case.

offense.  28 C.F.R. § 2.20(b).  A prisoner's misconduct may result in the retardation or rescission

of a parole date after the addition of a new guideline range for the misconduct.  See 28 C.F.R.

§ 2.34 and § 2.36.  If the Commission finds that the prisoner has shown superior program

achievement while incarcerated, the prisoner may be rewarded for such achievement through an

earlier parole date in accordance with the policy described at 28 C.F.R. § 2.60.[9]  Therefore, the

Commission does not ignore institutional program achievement in its rules governing decision-

making under the guidelines of § 2.20.  Superior program achievement is a factor that may

favorably affect the setting of a parole date for the prisoner according to the policy described at §

2.60.[10]

---

[9]When first promulgated in 1979, the Commission's intent behind § 2.60 was to authorize a limited, but meaningful, reward for prisoners who spend their prison time in an exceptionally constructive manner.  See 44 FR 31027-28 (May 30, 1979) and 44 FR 55003-05 (Sept. 24, 1979). The rule was intended to strike a "middle ground" between the views that program performance should be the primary factor in parole decision-making and no factor at all.  44 FR at 31027.  The Commission cited to empirical studies that indicated smaller rewards for behavioral change could be more effective than larger rewards.  Id.

Under the policy outlined in § 2.60, the reward for superior program achievement may be extended either by a reduction of a previously-granted parole date at an interim hearing or record review held after the initial parole (or re-parole) consideration, or by applying the policy at the initial consideration for a prisoner who has already been incarcerated for his current offense or violation for an extended period, and has participated substantially enough in prison programs to warrant consideration for the award.  See U.S. Parole Commission Rules and Procedures Manual, 2.60-02, p. 176 (Nov.15, 2007).  The policy sets out a schedule of permissible reductions for superior program achievement based on the number of months required by the original presumptive parole date.  For example, if a prisoner's presumptive parole date requires service of 73-78 months, the permissible reduction for superior program achievement is up to 10 months.  See § 2.60(e). This permissible reduction may be exceeded only in the most clearly exceptional cases. § 2.60(c).

[10]Admittedly, the guidelines themselves, in particular the salient factor score, do not incorporate post-imprisonment program performance as an item in the guidelines.  However, there is a good reason for this omission, namely the absence of empirical proof that institutional performance affects the likelihood of offender recidivism after release.  See 44 FR at 31027.  If

## II.    Petitioner Has Failed To Demonstrate Risk of Increased Punishment

Application of laws that change the punishment and inflict a greater punishment than the law at the time the crime was committed violate the Ex Post Facto clause of the Constitution. See Johnson v. United States, 529 U.S. 694, 699 (2000); Collins v. Youngblood, 497 U.S. 37, 43 (1990); In Re W.M. 851 A.2d 431, 440 (D.C. 2004), cert. denied, 543 U.S. 1062 (2005).  In some cases, retroactive changes in parole laws may violate the Ex Post Facto clause of the Constitution.  Garner v. Jones, 529 U.S. 244, 250  (2000), citing, Lynce v. Mathis, 519 U.S. 433, 445-446 (1997) and California Department of Corrections v. Morales, 514 U.S. 499, 508-509 (1995).  The focus in an ex post facto challenge in a parole case is whether the change in the parole law, when retrospectively applied, has made an offender's punishment "more burdensome."  The inquiry is whether the retroactive application of the changed rule created "a sufficient risk of increasing the measure of punishment attached to the covered crimes."  Garner, supra, 529 U.S. at 250.  Under the analysis described in Garner, a court reviewing an ex post facto claim must first examine whether the challenged parole law, "by its own terms, show[s] a significant risk" of increased punishment for the offender.  Id. at 255.  When it does not, the offender raising the challenge "must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule."  Id.; see Michael v. Ghee, 498 F.3d 372, 384 (6th Cir. 2007) (relevant inquiry in an ex post facto challenge is whether the new challenged parole guideline, on its face, shows significant risk of increased punishment,

---

institutional performance is not predictive of future behavior in the community, then this item should not be included in the salient factor score, a device that assists the Commission in evaluating the risk of future parole violation by the prisoner.

and if not, whether evidence of its application demonstrates a longer period of incarceration than under the earlier guideline); Fletcher v. Reilly, 433 F.3d 867, 869-70 (D.C. Cir. 2006) ("the critical question in ex post facto challenges to retroactively applied parole/reparole regulations is whether, as a practical matter, the retroactive application creates a significant risk of prolonging an inmate's incarceration").  The general operation of the parole system may provide relevant evidence and inform the analysis, but the offender has the burden of showing "that as applied to his own sentence the law created a significant risk of increasing his punishment." Garner, supra, 529 U.S. at 250.  Whether petitioner's punishment has been impermissibly increased in violation of the Ex Post Facto clause is a "matter of degree." Id.

The petitioner has failed to carry his burden of showing that the retrospective application of the Commission's re-parole guidelines has substantially risked an increase in his punishment. The "law" in question is the aggregate of Commission regulations at 28 C.F.R. § 2.81, § 2.21, and § 2.20, which combine to require that the Commission use the paroling policy guidelines at § 2.20 and § 2.21 to make re-parole decisions for D.C. Code offenders who have had their paroles revoked and who are not serving a new, parole-eligible D.C. Code sentence.  These guidelines embody and structure the exercise of discretionary judgment as to the weight that should be given various determinative factors in parole release decision-making.  28 C.F.R. § 2.20(a).  Because the guidelines are only general guides as to the exercise of release decision-making and allow for departures for individual case factors, the petitioner has a particularly heavy burden of showing that, when applied to his case, the use of the paroling guidelines has significantly increased his punishment in violation of the Ex Post Facto clause.  See Blair-Bey v. Quick, 159 F.3d 591, 592 (D.C. Cir. 1998) (on remand petitioner would have to demonstrate that

D.C. Board of Parole's discretion under its guidelines "is totally or very substantially circumscribed in law or in fact, and yields results materially harsher than those ordinarily occurring under the prior regime").

The petitioner argues that, with the Board's guidelines purported focus on prisoner rehabilitation and post-incarceration behavior and the Commission's purported emphasis on punishment and risk of recidivism, he would have been re-paroled earlier utilizing the Board's regulations than the Commission's regulations.  On their face, the Board's enabling statute and regulations do not support the petitioner's claim concerning the weight the Board placed on various factors in the re-parole decision-making process and the petitioner has failed to provide any evidence as to how the Board judged certain factors in deciding when offenders should be granted re-parole. Rather, it is apparent that the Board's regulation, § 105.1, only provided a general description of some of the factors to be considered in making release decisions, without indicating whether some factors were more important than others.  In the absence of more specific guidance from the terms of the Board's regulations, no one could confidently find that these regulations, on their face, provide a basis for making a reasonable comparison with the Commission's subsequent set of parole release regulations and concluding that the Commission's regulations made parole more or less likely to attain.  As discussed, supra, a review of the Commission's rules shows that the Commission weighs superior program achievement under its guidelines scheme.  So it would be incorrect to claim that the Commission ignores prison achievements in making re-parole decisions for D.C. offenders.

More importantly, the petitioner has not demonstrated that his punishment has been increased by the Commission's failure to weigh his purported prison progress after his parole

revocation.  His parole was only recently revoked and the petitioner has not demonstrated any

record of institutional achievements subsequent to his arrest in November 2007.  Thus, the

petitioner has no institutional achievement to be considered under either the Board's or the

Commission's regulations.

　　　Lastly, the petitioner argues that under the Board's rules he would have received only a

6-month "set-off."[11]  If the petitioner is alleging that the Board's rules entitled him to a rehearing

6 months after the revocation decision, his claim is without merit and is apparently based on an

incorrect reading of the regulation.  The Board's former regulation provided that, if the offender

had less than 5 years remaining on his sentence, he would ordinarily receive a rehearing 6 months

from the Board's last action and, if the offender had more than 5 years remaining, the rehearing

would ordinarily be held one year from the last action.  The petitioner had more than 5 years

remaining on his sentence when the Commission revoked his parole, therefore the Board's

former regulation only gave him an opportunity for a parole rehearing in March 2009, one year

from the date of his parole revocation.  In contrast, the Commission actually granted the

petitioner a re-parole date, effective November 15, 2008, not just a rehearing in March, 2009 to

consider whether the petitioner should be granted re-parole.  Thus, the application of the

Commission's re-parole guidelines resulted in a decision that was more favorable to the

petitioner than if the Commission had used the Board's rehearing schedule.

　　　In order to succeed on his ex post facto claim, the petitioner must show that he personally

has incurred a substantial risk of increased punishment by application of the Commission's

---

[11]Even back when the Board had jurisdiction over the petitioner, it did not grant the petitioner re-parole for four years after his parole was initially revoked. See Exhibit 8B at p. 1-2.

policies, including its alleged failure to weigh prison program achievements. See Richardson v. Pennsylvania Board of Probation and Parole, 423 F.3d 282, 291-94 (3rd Cir. 2005).  He is far short of making the necessary showing.

## CONCLUSION

For the foregoing reasons, the petitioner has failed to demonstrate that the utilization of the Commission's regulations has violated the Ex Post Facto clause of the Constitution and, therefore, the petitioner's petition for a writ of habeas corpus should be summarily denied.

A proposed order is attached.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar Number 498-610

_____/s/_____
ROBERT D. OKUN
Assistant United States Attorney
Chief, Special Proceedings Division
D.C. Bar Number 457-078

_____/s/_____
SHERRI L. BERTHRONG
Assistant United States Attorney
Special Proceedings Division
D.C. Bar No. 249-136
Sherri.Berthrong@usdoj.gov
555 4th Street, N.W., Room 10-450
Washington, D.C. 20530
(202) 514-6948

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the United States Parole Commission's Opposition has been electronically filed with the Court and served by mail upon the petitioner, Melvin Crosby-Bey, also known as, Anthony Crosby-Bey, DCDC # 175-772, D.C. Correctional Treatment Facility, 1901 E. Street, S.E., Washington, D.C. 20003, this 4th day of April, 2008.

_____/s/ _____
Sherri L. Berthrong
Assistant United States Attorney

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**MELVIN CROSBY-BEY,**       :
  **Also Known As ANTHONY CROSBY-BEY,**:  **Civil Action No. 08-311 (HHK)**
   **Petitioner**      :
             :
**v.**            :
             :
**EDWARD F. REILLY, Jr., et al.,**   :
   **Respondents**      :

## ORDER

   Upon consideration of the Petitioner's <u>Pro Se</u> Petition for a Writ of Habeas Corpus, the

U.S. Parole Commission's Opposition to the Petitioner's Petition for a Writ of Habeas Corpus,

and for the reasons stated in the U.S. Parole Commission's Opposition, it is hereby

   **ORDERED** that the show cause order as to the U.S. Parole Commission is discharged,

and that Petitioner's Petition for a Writ of Habeas Corpus is **DENIED**.

   **SO ORDERED**, this _____day of _____, 2008.

            _____
            Henry H. Kennedy, Jr.
            U.S. District Court Judge

Copies to:

Melvin Crosby-Bey, also known as, Anthony Crosby-Bey
DCDC # 175-772
D.C. Correctional Treatment Facility
1901 E. Street, S.E.
Washington, D.C. 20003

Sherri L. Berthrong
Assistant United States Attorney
Special Proceedings Division
555 4th Street, N.W., Room 10-450
Washington, D.C.  20530

**EXHIBIT 1**

# Superior Court of the District of Columbia

### CRIMINAL DIVISION

## JUDGMENT AND COMMITMENT ORDER

United States of America

Case Number _873+76 (A,C-C)_

vs

PDID Number _296-757_

_Anthony R. Canady ana Melvin Canady_

JCLISTR

WHEREAS the above-named defendant having entered a plea of _____

☑ Not Guilty                    ☐ Guilty

to the charge(s) of _A) Burglary II while Armed_

_(-0) Assault with Dangerous weapon_

_B) Carrying a Pistol without a License_

and having been found guilty by

☑ Jury                    ☐ the Court

and a pre-sentence investigation and report having been

☑ prepared and considered                    ☐ not requested

IT IS HEREBY ADJUDGED that the defendant has been convicted of and is guilty of the offense(s) charged.

The defendant having been given an opportunity to make a statement in his own behalf, and the government having had the opportunity to reply thereto, it is hereby

ORDERED that the defendant be committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of

_A) Not less than fifteen (15) or more than forty-five (45) years_

_C) Not less than forty (40) or more than one hundred thirty (130) months, consecutive to A_

_D) Not less than forty (40) or more than one hundred thirty (130) months, consecutive to B273-76_

_B) One (1) year consecutive to others_

_At request of defendant, commitment to a Federal Institution is requested._

IT IS FURTHER ORDERED that the Clerk or his Deputy deliver a true copy of this order to the United States Marshal and that the copy shall serve as the commitment of the defendant.

_October 1, 1976_
Date

_[signature]_
Judge

A TRUE COPY OF THIS ORDER DELIVERED TO THE U.S. MARSHAL OR HIS DEPUTY:

_10-6-76_
Date

_C.A. Griffin_
Deputy Clerk

J-061p-76

**Exhibit**

A TRUE COPY
TEST:

**EXHIBIT 2**





82 C-18

**U.S. Department of Justice**
**United States Parole Commission**

**CERTIFICATE OF PAROLE**
District of Columbia Offender

RECEIVED
JAN 4 2001

Know All Men By These Presents:

It having been made to appear to the United States Parole Commission that CROSBY, Melvin, REG No. 00175+772 (DCDC No. 175-772), is eligible to be paroled, and that there is a reasonable probability that the prisoner will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society, it is ORDERED by the said United States Parole Commission that said prisoner be paroled on December 22, 2000, and that said prisoner is to reside within the District of Columbia and to remain within the limits of the Washington, D.C. Metropolitan Area (including the District of Columbia; Prince Georges and Montgomery Counties of Maryland; Arlington and Fairfax Counties in Virginia, including the cities of Alexandria, Fairfax, and Falls Church, Virginia) until and including May 21, 2021.

Given under the hand and the seal of the United States Parole Commission, on December 22, 2000.

UNITED STATES PAROLE COMMISSION

By: Deborah H. Dudley, Case Analyst

Docket/Case Number: 724-76A:874-76E:874-76FD

Acknowledgement of Receipt of Conditions:
I have read, or had read to me, the conditions of parole printed on the attached Conditions of Release form and have received a copy thereof. I fully understand them and know that if I violate any, I may be recommitted.

Consent to the Disclosure of Drug/Alcohol Treatment Information:
By signing this Parole Certificate, I consent to the unrestricted communication between any treatment facility at which any drug or alcoholic treatment program, in which I am, or will be participating, and the Parolee Supervision Services Division of the District of Columbia Board of Parole. I further consent to the disclosure by such facility to the Parolee Supervision Services Division of any information concerning and the disclosure of such information to any agencies that require it for the performance of their official duties. This consent shall be irrevocable until the termination of parole supervision.

Melvin Crosby                                          DCDC#175772
          Name                                          DCDC No.

Witnessed: _____  1/2/2001
          Name and Title                    Date

The above-named person was released on the **3rd** day of **January**, 20**01** with a total of
**6,211** days remaining to be served.

USP-D.C.  Court Services & Offender Supervision Agency

Exhibit ___2___

01/02/01  17:02 FAX 202 626 0788                                    ☑003/005

Linda L. Hawkins, Legal Instruments Examiner
Official Certifying Release



**EXHIBIT 3**



CX5



**Court Services and Offender Supervision Agency**
**for the District of Columbia**
*Community Supervision Services*
*General Supervision Branch "B"*

JUL 31 2003

### REPORT OF ALLEGED VIOLATION(S)

7/25/03

**TO:**           'United States Parole Commission'
**FROM:**        Darek Thomas          **Unit:**           31
                 Community Supervision Officer **Telephone:**   2-585-7880

**Client:**       Melvin Crosby         **FBI #:**         377050H
**DCDC #:**       175-772               **PDID #:**        296-737
                  01366-000
Action Recommended:        Warrant

**Sentencing Information:**

Mr. Melvin Crosby is a DC Parole Violator for the original offenses of Burglary II while Armed, Assault with a Deadly Weapon (2cts.), and CPWOL. Mr. Crosby was granted parole and released on January 3, 2001 with a full term date of May 18, 2021.

**Violations:**

(1) Failure to comply with drug aftercare conditions: The defendant has failed to comply with the conditions of the drug programs that have been recommended to him. In the latest incident, the defendant failed to report for his CIT appointment on July 3, 2003 after being informed of the appointment date on July 1, 2003.

(2) Use of a controlled substance: The defendant has submitted numerous positive urines for cocaine (see attached DTMS report).

(3) Failure to report for supervision: The defendant has failed to report in person to the Anacostia Field Unit since July 1, 2003 and remains in a loss of contact status with his current whereabouts unknown.

**Case Summary:**

The defendant has made supervision of his case difficult for every officer that has come in contact with him. Defendant has constantly denied responsibility for his positive urines and often threatens legal action (see attached running record). Defendant has either failed to make appointments when referred for drug treatment or his participation has not been up to a satisfactory level. The defendant also failed to appear in court on June 23, 2003, for a Civil Protection Order that is being sought against him by his former girlfriend Kim Jordan.

*1418 Good Hope Rd. SE, Washington, DC 20020*
*Voice: (202) 585-7880  Fax: (202) 585-7840* **Exhibit    3**



Court Services and Offender Supervision Agency                                    Page 2

The defendant has previously been issued a Letter of Reprimand by the U.S. Parole Commission on May 13, 2002 (see attached). The US Parole Commission chose to not revoke the defendant's parole on September 9, 2002 but stated that the defendant would be subject to the Special Drug Aftercare Condition (see attached).

**Recommendation:**

A warrant is respectfully requested.

Respectfully Submitted,

Signature: _____                    Date: 7/25/03
Darek Thomas
Community Supervision Officer

Approved by:

Signature: _____                    Date: 7/25/03
William Ashe
Supervisory Community Supervision Officer

cc:

**EXHIBIT 4**

 

**Court Services and Offender Supervision Agency**
**for the District of Columbia**
*Community Supervision Services*
*General Supervision Branch "B"*

### ADDENDUM TO REPORT OF ALLEGED VIOLATION(S) DATED 7/25/03

9/12/03

| | | | |
|---|---|---|---|
| **TO:** | 'United States Parole Commission' | | |
| **FROM:** | Darek Thomas | **Unit:** | 31 |
| | Community Supervision Officer | **Telephone:** | 2-585-7880 |

| | | | |
|---|---|---|---|
| **Client:** | Melvin Crosby | **FBI #:** | 377050H |
| **DCDC #:** | 175-772 | **PDID #:** | 296-737 |

01366-000

Action Recommended:     Warrant

**Sentencing Information:**

Mr. Melvin Crosby is a DC Parole Violator for the original offenses of Burglary II while Armed, Assault with a Deadly Weapon (2cts.), and CPWOL. Mr. Crosby was granted parole and released on January 3, 2001 with a full term date of May 18, 2021.

**Violations:**

(1) Failure to comply with drug aftercare conditions: The defendant has failed to comply with the conditions of the drug programs that have been recommended to him. In the latest incident, the defendant failed to report for his CIT appointment on July 3, 2003 after being informed of the appointment date on July 1, 2003.

(2) Use of a controlled substance: The defendant has submitted numerous positive urines for cocaine (see attached DTMS report). The defendant drug tested positive for cocaine on the following dates: 4/9/03, 4/25/03, 4/30/03, 5/2/03, 5/9/03, 5/14/03, 6/4/03, 6/6/03, 6/13/03, 6/18/03, 6/20/03, 6/25/03, and 6/27/03.

(3) Failure to report for supervision: The defendant has failed to report in person to the Anacostia Field Unit since July 1, 2003 and remains in a loss of contact status with his current whereabouts unknown. When the defendant reported in for supervision on July 1, 2003, he was given his next scheduled appointment date and time of July 16, 2003 at 4pm. The defendant failed to appear for this appointment and has not been heard from since.

**Case Summary:**

The defendant has made supervision of his case difficult for every officer that has come in contact with him. Defendant has constantly denied responsibility for his positive urines and often threatens legal

*1418 Good Hope Rd. SE, Washington, DC 20020*
*Voice: (202) 585-7880  Fax: (202) 585-78*

Exhibit ___4___



Court Services and Offender Supervision Agency                                    Page 2

action (see attached running record). Defendant has either failed to make appointments when referred for drug treatment or his participation has not been up to a satisfactory level.

The defendant has previously been issued a Letter of Reprimand by the U.S. Parole Commission on May 13, 2002 (see attached). The US Parole Commission chose to not revoke the defendant's parole on September 9, 2002 but stated that the defendant would be subject to the Special Drug Aftercare Condition (see attached).

**Recommendation:**

A warrant is respectfully requested.

Respectfully Submitted,

Signature: _____          9.12.03
            Darek Thomas                         Date: 9/12/03
            Community Supervision Officer

Approved by:

Signature: _____          9-12-03
            Joel Azikiwe                         Date: 9/12/03
            Supervisory Community Supervision Officer

cc:

**EXHIBIT 5**

 

**U.S. DEPARTMENT OF JUSTICE**
**UNITED STATES PAROLE COMMISSION**

**WARRANT APPLICATION**
**D.C. Code Offender**

Name............................. Crosby, Anthony

| | | | |
|---|---|---|---|
| Reg. No .......................... **01366-000** | Date.......................................... **October 21, 2003** |
| DCDC No. ..................... **175-772** | Termination of Supervision ..... **May 18, 2021** |
| FBI No ........................... **377050H** | [If Conviction Offense Before April 11, 1987 And |
| Birth Date ...................... ~~●━━━━━━~~ | Offender Is On Mandatory Release, Termination |
| Race .............................. **Black** | Date Is 180 Days Prior To Full Term] |
| | Violation Date .......................... **April 9, 2003** |
| | Released ................................. **January 3, 2001** |

Sentence Length............ **45 Years**
Original Offense ............ **Burglary II While Armed; Assault With a Deadly Weapon (2 Counts); Carrying a Pistol Without a License**

If you have been arrested on a violator warrant in the District of Columbia and you have not been convicted of a new offense, you shall be given a probable cause hearing within five days of your arrest and violator warrant. Probable cause hearings are normally scheduled on Tuesdays and Fridays at the Central Detention Facility. The purpose of the probable cause hearing is to determine if there is probable cause to believe that you have violated the conditions of your release, and if so, whether to release you or hold you for a revocation hearing. If no probable cause is found, you will be released and either reinstated to supervision, or discharged from further supervision if your sentence has expired.

At your probable cause hearing and any subsequent revocation hearing you will be apprised of the information supporting the violation charges. You may present documentary evidence and voluntary witnesses on your behalf. If you deny the charge(s) against you, you may request the presence of those persons who have given information upon which the charges are based. Such adverse witnesses will be made available for questioning unless good cause is found for their non-appearance.

You may be represented by an attorney or, if you are unable to pay for such representation, an attorney will be appointed for you if you fill out and promptly return a request for representation to the hearing examiner.

If, after a revocation hearing, you are found to have violated the conditions of your release the Commission may: (1) restore you to supervision, and, if appropriate, (a) reprimand you; (b) modify your conditions of supervision; or (c) refer you to a residential community treatment center for the remainder of your sentence; or (2) revoke your parole, mandatory release, or supervised release in which case the Commission will also decide when to consider you for further release.

If the Commission revokes your parole, mandatory release, or supervised release you will not receive credit toward service of your sentence for time spent on parole/mandatory release/supervised release.

## CHARGES:

**Charge No.  1- Use of Dangerous and Habit Forming Drugs.**  On the following dates, the subject submitted urine specimens, which tested positive for the drugs specified:
Cocaine Metabolite on 4/9/03 ; 4/25/03 ;4/30/03 ;5/2/03 ;5/9/03 ;5/14/03 ;6/4/03 ;6/6/03 ;6/13/03 ; 6/18/03 ; 6/20/03 ; 6/25/03 ; and 6/27/03.
This charge is based on the information contained in the violation report dated 9/12/03 from Community Supervision Officer Thomas and the corresponding laboratory report.
**I ADMIT [   ] or DENY [   ] this charge.**



**Charge No. 2 - Violation of Special Condition (DAPS).** Since 7/3/03, the subject has willfully refused to participate in the Special Drug Aftercare Program as instructed by his Community Supervision Officer and as required by the conditions of his release. On 7/1/03, the subject was instructed to report to his CIT appointment on 7/3/03. The subject failed to report as instructed, and has not made any attempts to contact the program since 7/3/03. This charge is based on the information contained in the violation report dated 9/12/03 from Community Supervision Officer Thomas.
**I ADMIT [   ] OR DENY [   ] this charge.**

**Charge No. 3 - Failure to Report to Community Supervision Officer as Directed.** On the following date, 7/16/03, the subject failed to report to his Community Supervision Officer as directed. The subject has failed to contact his supervision officer since his last appointment on 7/1/03. The subject has remained in a loss of contact status since 7/16/03, and his current whereabouts are unknown. This charge is based on the information contained in the violation report dated 9/12/03 from Community Supervision Officer Thomas.
**I ADMIT [   ] or DENY [   ] this charge.**

**Probable Cause Hearing Is Required**

**Warrant Recommended By:**

Warrant Issued.................. **October 21, 2003**

**Paul R. A. Howard, Hearing Examiner**
**U.S. Parole Commission**

Community Supervision Office Requesting Warrant: **General Supervision Unit II, 1418 Good Hope Road**

---

**EXHIBIT 6**

# W A R R A N T
## D.C. Code Offender

**U.S. Department of Justice**
**United States Parole Commission**

**To the U.S. Marshal or Any Federal or District of Columbia Officer Authorized to Serve Criminal Process Within the United States:**

WHEREAS, Crosby, Anthony, Reg. No. 01366-000, DCDC No. 175-772, was sentenced by the Superior Court of the District of Columbia or the United States District Court to serve a sentence of 45 Years for the crime of Burglary II While Armed; Assault With a Deadly Weapon (2 Counts); Carrying a Pistol Without a License and was on January 3, 2001, released on parole from Lorton Central Facility with 6211 days remaining to be served;

AND, WHEREAS, reliable information has been presented to the undersigned Member of this Commission that said released prisoner named in this warrant has violated one or more conditions of his release;

NOW, THEREFORE, this is to command you by the authority of §§24-205, 24-131, and 24-133 of the District of Columbia Code, to execute this warrant by taking the above-named, wherever found in the United States, and hold him in your custody either until he is released by order of the Parole Commission, or until you are authorized to transport him for further custody.

WITNESS my hand and the seal on October 21, 2003

_____
U.S. Parole Commissioner

**Exhibit ___6___**

**Crosby, Anthony**
**Reg. No. 01366-000    DCDC No. 175-772**

**<u>EXHIBIT 7</u>**

## WARRANT For Return Of Prisoner Released To Supervision

Name:  Crosby, Anthony                     Institution:
Reg. No. 01366-000                          DCDC No.  175-772

## UNITED STATES MARSHAL'S RETURN TO UNITED STATES PAROLE COMMISSION

NOTE:  Do not execute this warrant if the subject is being held in custody on other federal, state or local charges, unless otherwise ordered by the Commission. (See instructions on accompanying memorandum.)

_____ District of _____ ss:

Received this writ the __21st__ day of __October__, 20 _03_, and executed same by arresting the within-named __Anthony Crosby__ this __16th__ day of __November__, 20 _07_, at __1200__ and committing him to __DC JAIL__

_G. Walsh_
*U.S. Marshal*

_D_____
*Deputy Marshal*

Further executed same by committing him to _____ at _____ on _____, 20_____, the institution designated by the Attorney General, with the copy of the warrant and warrant application.

_____
*U.S. Marshal*

_____
*Deputy Marshal*

NOTE:  The original of this warrant is to be returned to the U.S. Parole Commission, 5550 Friendship Boulevard, Chevy Chase, Maryland 20815.

## ACKNOWLEDGEMENT OF SERVICE:

I have received a copy of the warrant application dated _____ __10-21-03__ _____

__11-16-07__

_X_ _____       _____
*Prisoner's Signature*                          *Date*

_____
Crosby, Anthony
Re__.io. 01366-000   DCDC No. 175-7~~~ Exhibit __7__

**EXHIBIT 8A**

# D.C. PROBABLE CAUSE HEARING DIGEST

Name.............................: Crosby, Anthony

Reg. No..........................: 01366-000

Type of Release ............:Parole

Full Term Date When Warrant Issued..: Parole

Date Warrant Executed.: 11·16·07

Hearing Date........: 11·23·07

Examiner.............: P. Howard

Supervision Officer: Darek Thomas

---

## Attorney at Probable Cause Hearing:

[ ✓ ] PDS    [ ] Other    [ ] None

Name O. Moyd

Address_____

_____

Phone_____

## Attorney Representing Subject at Revocation Hearing:

[ ✓ ] PDS    [ ] Other    [ ] Unknown

Name_____

Address_____

Phone_____

---

## I. Items Advised *(Check that the subject has been advised of the following two rights)*:

[ ✓ ] Advised of Right to a Probable Cause Hearing    [ ✓ ] Advised of Right to Attorney

---

## II. Reason For Not Conducting Probable Cause Hearing

*(If Probable Cause Hearing not conducted, indicate the reason)*:

[ ] Postponed to Next Docket *(If so, provide reason for postponement and omit rest of form.)*

[ ] At Request of Attorney/Prisoner    [ ] Prisoner Unavailable

[ ] Other Reason:_____

[ ] Combined Probable Cause/Revocation Scheduled *(If so, skip to VI, Revocation Hearing.)*

---

**Crosby, Anthony**
*CROSBY, Milton –True Name*    **Exhibit** _____ 8A
Reg. No. 01366-000    DCDC No. 175-772

## III.  Review of Charges:

**Charge No. 1 - Use of Dangerous and Habit Forming Drugs**

[  ] ADMITS        [ ✓ ] DENIES

The Subject's Response: _No Comms_

_____

_____

_____

_____

[ ✓ ]  **Probable Cause Found.**  After considering the violation report dated 9/12/03, and the subject's response to the charge at this hearing, the evidence supporting the charge is sufficiently specific and credible for the existence of probable cause for Charge No. 1.    Additional reasons for probable cause finding:_____

_____

_____

[  ]  NO PROBABLE CAUSE FOUND

_____

**Charge No. 2 - Violation of Special Condition (DAPS)**

[  ] ADMITS        [ ✓ ] DENIES

The Subject's Response: ____No Comns____

_____

_____

_____

[ ✓ ]  **Probable Cause Found.**  After considering the violation report dated 9/12/03, and the subject's response to the charge at this hearing, the evidence supporting the charge is sufficiently specific and credible for the existence of probable cause for Charge No. 2. Additional reasons for probable cause finding:_____

_____

_____

[  ]  NO PROBABLE CAUSE FOUND

_____

**Charge No. 3 - Failure to Report to Community Supervision Officer as Directed**

[  ] ADMITS        [ ✓ ] DENIES

_____

**Crosby, Anthony**
*CROSBY, Milton –True Name*
**Reg. No. 01366-000    DCDC No. 175-772**

The Subject's Response:_____
_____
_____
_____
_____

[ X ] **Probable Cause Found.**  After considering the violation report dated 9/12/03, and the subject's response to the charge at this hearing, the evidence supporting the charge is sufficiently specific and credible for the existence of probable cause for Charge No. 3.  Additional reasons for probable cause finding:_____
_____
_____

[  ] **NO PROBABLE CAUSE FOUND**

## IV. Additional Charges:

_____
_____
_____
_____

## V. Outcome of Probable Cause Hearing:

[ X ] **Probable Cause Found** on one or more charges, **Hold in Custody** pending revocation hearing.

[  ] **No Probable Cause Found** for any charge.  **Discharge from Custody** immediately and

　　　[  ] **Reinstate** to Supervision or  [  ] **Close Case** *(If expiration date has passed)*

[  ] **Probable Cause Found** on one or more charges.  Recommend **Reinstate to Supervision** and

　　　[  ] **Summon** to revocation hearing or [  ] **Terminate** revocation proceedings

Reason for Release/Summons:_____
_____
_____

## VI. Adverse Witnesses Identified by the Commission:

Supervision Officer Darek Thomas

**Crosby, Anthony**
*CROSBY, Milton – True Name*
Reg. No. 01366-000    DCDC No. 175-772

## VII. Adverse Witnesses Requested by Subject:

Name: _Any and all witness used in/uely or To_

Address: _future witness_

Phone No. _____

Status: [  ] Denied at PC Hearing    [  ] Approved at PC Hearing    [  ] Pending Further Review

Reason for Denial: _____

_____

_____

Name: _____

Address: _____

Phone No. _____

Status: [  ] Denied at PC Hearing    [  ] Approved at PC Hearing    [  ] Pending Further Review

Reason for Denial: _____

_____

_____

Name: _____

Address: _____

Phone No. _____

Status: [  ] Denied at PC Hearing    [  ] Approved at PC Hearing    [  ] Pending Further Review

Reason for Denial: _____

_____

_____

## VIII. Adverse Witnesses Identified by Examiner But Not Requested by Subject:

Name: _____

Address: _____

Phone No. _____

Reason for Denial: _____

_____

_____

**Crosby, Anthony**
*CROSBY, Milton –True Name*
**Reg. No. 01366-000    DCDC No. 175-772**

Name:_____

Address:_____

Phone No._____

Reason for Denial:_____

_____

_____

## IX.   Revocation Hearing:

[ ✓ ] Local Revocation or        [  ] Combined Probable Cause/Local Revocation on:

Location: [  ] CTF   [  ] DC Jail   Date: __1 7 0 6__   Time: [ ✓ ] am   [  ] pm

[  ] Other at _____

_____

[  ] Recommend institutional revocation hearing upon transfer to a federal institution.

**Note:** A continuance must be requested in writing. You may submit your requests via e-mail. E-Mail Address: continue.hearing@usdoj.gov

**May Qualify for an Expedited Offer:**                    [  ] Yes      [  ] No

_____

*Additional Text:*

In custody since 11/15/07. Heary being done on 7th Day.

Will Consider Expedited Offer

_____          __11/23/07__
          *Examiner*                                              */Date/*

**Disclosure Documents:**  Warrant dated 10/2/1/03, Warrant Application dated 10/21/03, Violation Report dated 9/12/03 with attachments, Parole Certificate dated 1/2/01, Pre-Sentence Report

**I acknowledge having received the above disclosure documents and a copy of this document.**

_____          __11/23/07__
     *Attorney/Prisoner*                                        */Date/*

Crosby,  Anthony
*CROSBY, Milton – True Name*
Reg. No. 01366-000    DCDC No. 175-772

**EXHIBIT 8B**



## D.C. Local Revocation Prehearing Assessment

Name..........: **CROSBY, ANTHONY** 
Reg Number.: **01366-000**
Birth Date...: ▓▓▓▓▓▓
DCDC Number: **175-772**

### Prehearing Parameters
Date.................................: 12/05/2007
Examiner............................: Joseph M. Pacholski
Location............................: CTF (or DC Jail)

### Warrant Parameters
Supervision Type..................: Parole
Supervision District..............: General Supervision Unit IX-Team 53 1418 Good Hope Road
Warrant/Summons.................: Warrant
Warrant Executed..................: 11/16/2007
Probable Cause Found.............: 11/23/2007
Revocation Hearing Deadline.....: 01/21/2008

### Sentence Parameters
Adult / Youth......................: Adult
Jail Credit (days)..................: 0
In-Operative Time (days).........: 0
MR Date (2/3)......................: 04/17/2019
Full Term Date.....................: 11/16/2024
GL Credit (months)................: 0
GL Months in Custody.............: 1   as of 12/15/2007
GL Months at Projected MR.......: 137
Detainer............................: None

### Additional Text regarding the above parameters:

### Previous Commission Action:
On 10/06/76, subject was sentenced to 15-45 years after a jury found him guilty of Assault with a Deadly Weapon, Burglary II while Armed, and Carrying a Pistol without a License (8724-76). The underlying offense involved an attempted armed robbery of a jewelry store on 08/25/75 in which the victim struggled for the gun and the subject was shot in the face. The subject was paroled on 1/9/90 and his parole was revoked for the first time on 12/23/93, for failure to report to his PO and use of drugs. The subject had a difficult time getting reparoled. First, he was unsuccessfully terminated from a CCC in May, 1994. Then, he was referred for a Psychological Evaluation by DCDC. That Evaluation, dated 01/27/95, assessed that Crosby was angry, demanding and impulsive and suffered from a personality disorder. It also stated that he was uncooperative in addressing his behavior problem. However, they did not believe that he suffered from a mental illness. The subject was paroled

 

on 11/20/97 and his parole was revoked for the second time on 12/6/00, for Use of Drugs and Failure to Report to his PO. The subject was paroled on 1/3/01.

The Commission issued an Official Letter of Reprimand dated 5/13/02, for Use of Drugs (Cocaine and Morphine).

The Commission in a Notice of Action dated 10/28/05, ordered, Release forthwith from custody. Withdraw the warrant dated 10/21/03. The Commission determined the subject that the wrong individual was arrested on this warrant.

**Violations of Conditions of Release:**

### Charge No. 1 - Use of Dangerous and Habit Forming Drugs

Violation Behavior:............... . On the following dates, the subject submitted urine specimens, which tested positive for the drugs specified:
Cocaine Metabolite on 4/9/03 ; 4/25/03 ;4/30/03 ;5/2/03 ;5/9/03 ;5/14/03 ;6/4/03 ;6/6/03 ;6/13/03 ; 6/18/03 ; 6/20/03 ; 6/25/03 ; and 6/27/03.
This charge is based on the information contained in the violation report dated 9/12/03 from Community Supervision Officer Thomas and the corresponding laboratory report.

### Charge No. 2 - Violation of Special Condition (DAPS).

Violation Behavior:............... Since 7/3/03, the subject has willfully refused to participate in the Special Drug Aftercare Program as instructed by his Community Supervision Officer and as required by the conditions of his release. On 7/1/03, the subject was instructed to report to his CIT appointment on 7/3/03. The subject failed to report as instructed, and has not made any attempts to contact the program since 7/3/03. This charge is based on the information contained in the violation report dated 9/12/03 from Community Supervision Officer Thomas.

### Charge No. 3 - Failure to Report to Community Supervision Officer as Directed

Violation Behavior:............... . On the following date, 7/16/03, the subject failed to report to his Community Supervision Officer as directed. The subject has failed to contact his supervision officer since his last appointment on 7/1/03. The subject has remained in a loss of contact status since 7/16/03, and his current whereabouts are unknown. This charge is based on the information contained in the violation report dated 9/12/03 from Community Supervision Officer Thomas.

**Severity:** Category One

**Severity Justification:** Your violation behavior has been rated Category One severity because it involved administrative violations.

## SALIENT FACTOR SCORE  (SFS-98)

SFS Item A =  1    Subject has 3 prior convictions/adjudication.

| Date | Offense | Disposition |
|------|---------|-------------|
| 05/18/1973 | Armed Robbery | 4 years probation (1-0) |

| | | |
|---|---|---|
| 05/25/1975 | Shoplifting | 9 months plus 3 years probation (2-1) |
| 08/25/1975 | Assault with a Deadly Weapon, Burglary II while Armed, and Carrying a Pistol without a License (8724-76) | 15-45 years on 10/6/76 (3-2); Paroled on 1/9/90; Revoked on 12/23/93 (3-3) Paroled on 11/20/97; Revoked on 12/6/00 (3-4); Paroled on 1/3/01 |

SFS Item B = 0    Subject has 4 commitments of more than 30 days that were imposed prior to the last overt act of the current offense.

SFS Item C = 2    Subject was 48 years old at the commencement of the current offense and had 4 prior commitments.

SFS Item D = 0    04/09/2003 - Date of Current Offense.
01/03/2001 - Release to the Community from last commitment

SFS Item E = 0    Subject is a parole/ supervised release violator.

SFS Item F = 1    Sum of Items A-E = 3 and the offender was 48 years old at the commencement of the current offense.

**Salient Factor Score = 4**

**Rescission Behavior(s) :**
The prisoner had no Disciplinary Behavior after the Warrant Execution.

**Re-parole Guidelines (range in months): 8 - 12**

**Rescission Guidelines (range in months): 0 - 0**

**Aggregate Guidelines (range in months): 8 - 12**

**Text to Describe Any Other Behavior or Remaining Issues:**
None

**Evaluation:**
The subject has been in custody for 1 month as of 12/16/07. The violation behavior has been rated as a Category ONE severity because it involved administrative violations. The guideline range is 8-12 months.

The subject if continued to expiration would serve 137 months.

The time in custody is calculated from the date the warrant was executed.

 

The subject was paroled on 1/3/01. On 4/9/03, the subject started to submit positive urine samples for cocaine. Since 7/3/03, the subject willfully refused to participate in drug aftercare treatment. Since 7/16/03, the subject willfully stopped reporting to his CSO as directed thereby making himself unavailable for supervision. A release after 10 months is recommended with drug aftercare.

**EXHIBIT 9**

## HEARING SUMMARY

**Name: Crosby, Anthony**                                          **Reg No: 01366-000**

**Hearing Parameters**

    Hearing Format .............................: **In Person**

    Hearing Type .................................: **Revocation (Local)**

    Hearing Date ..................................: March 12, 2008

    Examiner.......................................: Paul R. A. Howard

    Institution .....................................: D.C. Correctional Treatment Facility

    Second Designation .....................: Unknown

**Sentence Parameters**

    Sentence Type...............................: **DC Parole Eligible**

    MR/Statutory Release Date..........: 4/17/2019

    Full Term Date..............................: 11/16/2024

    Months in Custody........................: 4 as of 3/15/2008

    Detainer........................................: None

**Warrant Parameters**

    Supervision ...................................: **Parole**

    Revoking District & Office..........: CSOSA, Washington, DC

    Warrant Execution Date...............: 11/6/2007

    Probable Cause Date ....................: 11/23/2007

**Additional text regarding the above parameters:**

**Prior Action:** See the Prehearing Assessment dated December 5, 2007.

**Counsel:** Olinda Moyd, DC Public Defender Services.

**Witnesses:** CSO Darek Thomas.

**Procedural Considerations:** Counsel objected to the examiner conducting the case because the records reflect that the examiner wrote the warrant application dated 10/21/2003 and conducted the Probable Cause Hearing on 11/23/2007. Counsel argued that since the examiner made certain decisions throughout the revocation process from the warrant application stage they are incapable of being objective in conducted the hearing.

<span style="float:right">Exhibit   **9**</span>



The hearing examiner acknowledged that they did prepare the warrant application however that was just a recommendation because the Parole Commissioners determined whether making the final decision in issuing the warrant.

Counsel further argued that the hearing examiner did make the final decision in making recommendations made at the Probable Cause Hearing are final decisions and not recommendations.

The examiner advised counsel that her objection was overruled because this examiner is capable of an objective recommendation to the Commissioner as the previous actions are separate from today's hearing. Furthermore, whatever objections made at today's hearing must be justified in the summary and the Commission will make the final decision regarding the alleged violation and a final recommendation.

**Charges:**

**Charge No. 1 - Use of Dangerous and Habit Forming Drugs.**
  **Evidence Presented:** The subject admitted the above charge.

  Counsel stated that the subject acknowledges that he did relapse and return to drug use. However, they would like the Commission take into account that some of the dates listed in the warrant application are results for residuals usage because cocaine typically stays in the system 1 to 5 days.
  **Findings of Fact:** This examiner finds that the subject violated the conditions of release as indicated in the above charge.
  **Basis:** Your admission and the documentary evidence.

**Charge No. 2 - Violation of Special Condition (DAPS).**
  **Evidence Presented:** The subject denied the above charge.

  Counsel stated that the subject was not given specific detailed instructions as to when and where to go for his CIT Assessment. Counsel submitted a supervision report dated 7/1/2003 which was signed by a CSO Washington which she believed was not specifics with instructions for his assessment.

  CSO Thomas stated that a subject has a specific pattern of not showing up and was not reporting for groups prior to being given that referral. CSO Thomas also noted that the subject had met with the CIT person two times prior to being given the referral so he was aware of who Mr. Anderson was. He referred to his running records dated 5/30/2003 which shows that the subject had met with Mr. Anderson on 5/28/2003.

  Based on the testimony from CSO Anderson and the documentary evidence, there is sufficient evidence to make a finding based on the preponderance standard. The supervision report indicate that the subject was given a date, time and address to report. Furthermore, CSO Thomas noted that the subject had met with Mr. Anderson two times prior so he was well aware of who Mr. Anderson was and the purpose of the appointment.
  **Findings of Fact:** This examiner finds that the subject violated the conditions of release as indicated in the above charge.
  **Basis:** Your admission and the documentary evidence.

**Charge No. 3 - Failure to Report to Community Supervision Officer as Directed.**
    **Evidence Presented:** The subject admitted the above charge.

Counsel acknowledged that the subject stopped reporting as of 7/16/2003. However, there were personal issues that he was dealing with that contributed to his lost of contact. She also wanted the Commission to be aware that these issues had not been addressed by the CSO after being brought to their attention. Counsel stated that after the subject was released from custody he did have stable residence. However, his relationship ended with his fiancé and he was forced to move from the residence and became homeless. The subject brought this matter to the CSO's attention stating he needed assistance which he did not receive. Per running records dated 6/17/2003, the subject called the CSO to change his appointment because he was living on the streets. He was told to report to address those issues and he did report. Per running records dated 6/20/2003, the subject reported late but was still testing positive and was not attending CIT Groups which was due to his residence status. Per running records dated 6/24/2003, the subject failed to report. He was testing positive for drugs, there was a CPO Order in effect and he was not attending groups and had no fixed address. The subject asked the CSO to help with assistance but did not receive any. With regards to the CPO, the running record dated 6/17/2003 indicates that he did meet with CSO Thomas and was told that a CPO had been filed. The subject asked to seek documentation but was denied. After he reported a couple more times he got scared and thought he was going to be arrested.

The subject stated that at the time he became homeless it was due to a misunderstanding with his fiancé and he was told to move out. He was homeless and the CSO was aware of his situation. He even tried to get the police to assist him to getting his personal belongings without success. The COP Order further complicated the situation because he had no prior knowledge or documentation and was fearful of being arrested. The only information he knew was that he was told by the CSO that he allegedly assaulted his fiancé.

Counsel noted prior to the subject absconding he was working for a number of attorneys and an investigator. Counsel submitted a letter from an attorney dated 1/24/2008 verifying employment and timesheets from the Steady Staff Temp Agency.

The subject was asked by the examiner what he was doing in the absconder status and he stated that he was working. He stated that he was not arrested during this period however; CSO Thomas submitted documentation to show that the subject was arrested in Rockville, MD and charged with Possession of Drug Paraphernalia prior to the violation warrant being executed. Counsel stated that the subject was pulled over by the police for a problem with the vehicle he was driving and was taken into custody on the violation warrant. The officer searched the car and found drug paraphernalia. However, the car did not belong to the subject.

Counsel made final arguments that the Commission should consider a decision below the guidelines. Per USPC regulations, when findings are made on administrative violations, CCC placement is preferable. Counsel believes subject's continued incarceration will serve no additional purpose and the fact that he will forfeit street time was additional punishment.

CSO Thomas added that the subject was very difficult while under supervision and very disrespectful to officers. As a matter of fact, the subject was transferred after he was very disrespectful to a female officer. The subject was given every opportunity but chose not to take

advantage of them. He dealt with the subject on a regular basis and his character was lacking. He does not believe a decision below the guideline is appropriate.

**Findings of Fact:** This examiner finds that the subject violated the conditions of release as indicated in the above charge.

**Basis:** Your admission and the documentary evidence.

**Discipline:** None.

**Release Plans:** The subject stated that when he's released he will reside with his sister-in-law  ■■■■■■■■■■■■■■, Suitland, MD 20746, phone ■■■■■■■■■

## Guideline Parameters

**Severity Justification:**   Category One because it involved Administrative Violations.
**Salient Factor Score:**      4

**Re-parole Guideline Range:**................ 8-12

**Evaluation:** The subject is serving an aggregate 45 year sentence for Burglary II while Armed, Assault with a Deadly Weapon Two Counts, and Carrying a Pistol without a License. The subject was initially paroled in January of 1990 and revoked twice. He was last paroled on 1/3/2001.

The subject has been in custody since 11/16/2007 on administrative violations. Based on today's testimony and findings, the subject began testing positive for drugs in April of 2003, Failed to Comply with Drug Aftercare in July of 2003 and absconded from supervision as of 7/16/2003. Counsel objected to the examiner conducting the hearing stating that the examiner was incapable of conducting a fair and objected to hearing because of previous actions taken by the examiner. Specifically, the examiner signed off on the initial warrant application dated 10/21/2003 which was approved by the Commission and conducted the Probable Cause Hearing on 11/23/2007. Counsel's objections was overruled because the examiner advised her that those were separate matters from today's hearing and the final decisions in those cases were made by the Parole Commission and not the examiner.

Findings were made on two of the administrative violations (Charges 1 and 3) based on the subject's admission. A Finding was made on Charge No. 2 based on testimony from the CSO and the documentary evidence.

In summary, the subject's issues appear to stem from his substance abuse. However, he failed to take advantage of drug treatment and absconded from supervision. Counsel argued that subject's personal issues such as his homelessness was the reason for his loss of contact. This reasoning is not valid because the subject has been under supervision for a number of occasions and is well aware of his parole conditions and the fact that he maintains contact despite any personal situations or crisis. Furthermore, the subject acknowledged that while in absconder status he maintained employment and established residence. Therefore, there was no reasoning for the subject not reestablishing contact with his supervisor officer.

A decision at the top of the guidelines is recommended based on the nature of the violations and the fact that the subject became a loss of contact. A Drug/Alcohol Special Condition is recommended.

**Recommendation:** Revoke parole.  None of the time spent on parole shall be credited.    Parole Effective 11/15/2008, after the service of 12 months.

**Conditions:** Drug/Alcohol Aftercare.

**Statutory Interim Hearing:** None.

**Guideline Use:** A departure from the guidelines at this consideration is not warranted.

**Additional Text:** During the hearing, a staff member from the CTF interrupted the hearing stating that he was instructed by the Captain to serve notice on the subject in regards to administrative infraction. Counsel objected but was advised by the officer that due to time constraints you have to provide notification to the subject within a certain time frame.

[Signature]

PRH/PAH
March 17, 2008

**Executive Reviewer's Comments:**

**EXHIBIT 10**



U.S. Department of Justice                                    **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

---

| | | |
|---|---|---|
| Name: CROSBY, Anthony | Institution: | D.C. CTF |
| Register Number: 01366-000 | | |
| DCDC No: 175-772 | Date: | March 27, 2008 |

As a result of the hearing conducted on March 12, 2008, the following action was ordered:

### DC Local Revocation

Revoke parole. None of the time spent on parole shall be credited. Re-parole effective November 15, 2008 after the service of 12 months.

NOTE: Pursuant to 28 C.F.R. §2.82, your parole effective date is contingent upon approval of your release plan by the Commission. Your release plan will be investigated by the D.C. Court Services and Offender Supervision Agency (CSOSA), which will submit a report to the Commission before a parole certificate can be delivered.

In addition, you shall be subject to the Special Drug and Alcohol Aftercare Conditions that requires that you participate as instructed by your Supervision Officer in a program (inpatient or outpatient) approved by the D.C. Court Services and Offender Supervision Agency for the treatment of narcotic addiction or drug and alcohol dependency. That program may include testing and examination to determine if you have reverted to the use of drugs or alcohol. You shall also abstain from the use of alcohol and all other intoxicants during and after the course of treatment.

### FINDINGS OF FACT:

The Commission finds as a fact that you violated conditions of release as charged as indicated below:

Charge No. 1 - Use of Dangerous and Habit Forming Drugs.

Basis: Your admission to the examiner and documentary evidence.

Charge No. 2 - Violation of Special Condition (Drug Aftercare).

Basis: Your admission to the examiner and documentary evidence.

Charge No. 3 - Failure to Report to Supervising Officer as Directed.

Basis: Your admission to the examiner and documentary evidence.

### REASONS:

Your parole violation behavior has been rated as administrative violation(s) of Category One severity. Your salient factor score is 4. See the attached sheet for an explanation of your individual Salient Factor Score items. The table at the bottom presents the points for Salient Factor Score Item C. As of 3/15/2008,

---

Exhibit _____ 10





you have been in confinement as a result of your violation behavior for a total of 4 month(s). Guidelines established by the Commission indicate a customary range of 8-12 months to be served before release. After review of all relevant factors and information, a departure from the guidelines at this consideration is not warranted.

THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    D.C. Federal Billing Unit
       D.C. Department of Corrections
       Washington, D.C. 20003

       U.S. Marshals Service
       District of Columbia - District Court
       333 Constitution Ave, N.W., Room 1400
       Washington, D.C. 20001
       Warrants - Attn: Karen Brown

       Olinda Moyd
       Public Defender Service
       District of Columbia
       Special Proceedings Division
       633 Indiana Avenue, N.W.
       Washington, D.C. 20004

       CSS Data Management Group
       D.C. Court Services & Offender Supervision Agency
       300 Indiana Avenue, N.W., Suite 2070
       Washington, D.C. 20001

Queued: 03-27-2008 10:27:06 BOP-D.C. Correctional Treatment Facility | BOP-D.C. Federal Billing Unit | USM-District of Columbia - District Court, D.C. District Court | FPD-District of Columbia, District of Columbia - DC |

## SALIENT FACTOR SCORE (SFS-98)

| Your Pts | Salient Factor Score (SFS-98) Item Explanations |
|---|---|
| 1 | A - Prior convictions/adjudications (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0 |
| 0 | B - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0 |
| 2 | C - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile) (see table below for an explanation) |
| 0 | D - Recent commitment free period (three years)<br>No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0 |
| 0 | E - Probation/parole/confinement/escape status violator this time<br>Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0 |
| 1 | F - Older offenders<br>If the offender was 41 years of more at the commencement of the current offense (and the total score from Items A-E above is 9 or less) = 1; Otherwise = 0 |
| 4 | **Salient Factor Score (SFS-98)** (sum of points for A-F above) |



| | Points for SFS Item C | | |
|---|---|---|---|
| | Prior Commitments | | |
| Age | 0-3 | 4 | 5+ |
| 26 & Up | 3 | 2 | 1 |
| 22-25 | 2 | 1 | 0 |
| 20-21 | 1 | 0 | 0 |
| 0-19 | 0 | 0 | 0 |

**EXHIBIT 11**

# District of Columbia

# REGISTER

# SPECIAL EDITION

## D. C. Rules and Regulations



### Title   9

RECEIVED

MAR 3 1 1982

LAW LIBRARY

OFFICE OF THE CORPORATION COUNSEL

BOARD OF PAROLE

April 24, 1981

## Washington, D.C.

Exhibit 11

Published by

Executive Office of the Commissioner
Office of the Secretariat
Room 114, District Building
Washington, D. C. 20004


Distributed by

Department of Economic Development
Office of Licenses and Permits
Room 105, 614 H Street, N. W.
Washington, D. C. 20001

# Title 9

## Board of Parole

### EXPLANATION

This Special Edition contains the rules and regulations constituting Title 9.

The text in this title is derived from the latest text of the rules and regulations, general and permanent in nature, duly promulgated on or before July 24, 1972. Source materials from which the text is derived are cited with the text and should be consulted to determine the effective date of any given provision.

Current regulatory material appearing in regular issues of the D. C. Register follows the numbering system used herein and serves as a supplement hereto.

TITLE 9, including an amendment service, may be purchased for $1.00 per copy, from the Department of Economic Development, Office of Licenses and Permits, Room 105, 614 H Street, N. W., Washington, D. C. 20001.

Make check or money order payable to the "D. C. Treasurer".

A General Explanation of the D. C. Rules and Regulations appears in the Special Edition containing Title 1 and in the General Index Special Edition. A list of titles, subtitles, chapters, subchapters, and parts of the entire set of D. C. Rules and Regulations is also published in the General Index Special Edition.

This title is published as a Special Edition of the D. C. Register. Collectively, the Special Editions of the D. C. Register constitute the D. C. Rules and Regulations, published pursuant to Chapter II of the rules and regulations of the Office of the Commissioner (Title 1, DCRR). The preferred citation of the compilation is "DCRR". Thus, the citation "1 DCRR 1.1" refers to Section 1.1 of Title 1, unless otherwise noted.

Title 9

Contents

|                                               | Page |
|-----------------------------------------------|------|
| Chapter I - Board of Parole                   | 1    |
| Part I - General Information                   | 2    |
| Chapter II - Adult Cases                       | 7    |
| Part I - Parole-Mandatory Release              | 7    |
| Part II - Supervision                          | 29   |
| Part III - Violation and Revocation            | 35   |
| Chapter III - Youth Corrections Act Cases      | 49   |
| Part I - Parole - Mandatory Release            | 49   |
| Part II - Supervision                          | 61   |
| Part III - Violation and Revocation            | 68   |
| Index                                          | 75   |

Title 9

Sec. 103                    <u>REHEARINGS</u>

All prisoners serving a maximum sentence of less than five years who were denied parole at their original parole hearing will ordinarily be granted a rehearing no later than six months after the Board's last action.

Prisoners serving a maximum sentence of five years or more who were denied parole at their original hearing ordinarily will receive a rehearing one year after the last action taken by the Board.

Rehearings will be afforded parole and mandatory release violators whose status was revoked by Board action. Such rehearings for a violator who has less than five years remaining to be served will ordinarily be held six months from the last Board action, while in the case of one having more than five years remaining to be served the rehearing will ordinarily be held one year from the last action taken by the Board.

In all cases of rehearings, the Board reserves to itself the right to establish a rehearing date at any time it feels such would be proper, regardless of the length of sentence involved or the time remaining to be served.

-15-

Title 9

Sec. 105               GRANTING PAROLE - GENERAL

The granting of a parole is neither a constitu-
tional or statutory requirement, and release to parole
supervision by Board action is not mandatory.

The statutory criteria for parole notes that:

...Whenever it shall appear to the Board of Parole
that there is a reasonable probability that a prisoner
will live and remain at liberty without violating the
law, that his release is not incompatible with the wel-
fare of society, and that he has served the minimum
sentence imposed or the prescribed portion of his
sentence as the case may be, the Board may authorize
his release on parole upon such terms and conditions
as the Board shall from time to time prescribe...

All Board decisions will be made by a majority
of the Members.

Sec. 105.1             FACTORS CONSIDERED

Among others, the Board takes into account some
of the following factors in making its determination
as to parole:

(a) The offense, noting the nature of the viola-
tion, mitigating or aggravating circumstances and the
activities and adjustment of the offender following
arrest if on bond or in the community under any pre-
sentence type arrangement.

-19-

Title 9

(b) Prior history of criminality noting the nature and pattern of any prior offenses as they may relate to the current circumstances.

(c) Personal and social history of the offender, including such factors as his family situation, educational development, socialization, marital history, employment history, use of leisure time and prior military experience, if any.

(d) Physical and emotional health and/or problems which may have played a role in the individual's socialization process, and efforts made to overcome any such problems.

(e) Institutional experience, including information as to the offender's overall general adjustment, his ability to handle interpersonal relationships, his behavior responses, his planning for himself, setting meaningful goals in areas of academic schooling, vocational education or training, involvements in self-improvement activity and therapy and his utilization of available resources to overcome recognized problems. Achievements in accomplishing goals and efforts put forth in any involvements in established programs to overcome problems are carefully evaluated.

(f) Community resources available to assist the offender with regard to his needs and problems, which

Title 9

will supplement treatment and training programs begun
in the institution, and be available to assist the
offender to further serve in his efforts to reintegrate
himself back into the community and within his family
unit as a productive useful individual.

Sec. 105.2     <u>GRANTING PAROLE IN RELATION TO LOSS AND
RESTORATION OF GOOD TIME</u>

In general, the Board will not grant parole unless
the prisoner has substantially observed the rules of
the institution in which he is confined.

Since the forfeiture of good time indicates that
the prisoner has violated the rules of the institution
to such a serious degree and that he may lack the
emotional controls necessary for making a satisfactory
adjustment in the community, parole may not be granted
where such forfeiture remains on the record.

In exceptional cases, where it appears on the
whole record, parole may be granted notwithstanding
that the forfeited good time has not been restored.  In
other cases, parole may be granted conditionally pending
restoration of the forfeited good time.

However, in no case shall forfeited good time
abridge the right of a prisoner to apply for or receive
a parole hearing.

-21-